ATTORNEYS FOR APPELLANT
Jack Kenney
Stacy R. Uliana
Indiana Public Defender Council
Indianapolis, Indiana

William F. Thoms, Jr.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Cynthia L. Ploughe
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 26 2009, 10:20 am

CLERK
of the supreme court,
court of appeals and
tax court

## In the
## Indiana Supreme Court

No. 49S02-0812-CR-643

BRYAN G. MOSLEY,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Marion Superior Court, No. 49F10-0711-CM-242464
The Honorable Linda E. Brown, Judge
The Honorable Louis F. Rosenberg, Magistrate

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-0802-CR-188

**June 26, 2009**

**Boehm, Justice.**

In Anders v. California, 386 U.S. 738 (1967), the Supreme Court of the United States established a procedure permitting appointed counsel to withdraw from "frivolous" criminal appeals. We decline to adopt the Anders protocol and hold that in any direct criminal appeal as a matter of right, counsel must submit an advocative brief in accordance with Indiana Appellate Rule 46.

**Facts and Procedural History**

Indianapolis Metropolitan Police officers William Flude and Joe Stern responded to a report of an unruly patron at Bubbaz Bar & Grill. After defendant Bryan Mosley refused repeated requests to leave, the officers advised him that he was under arrest. He was told to put his hands behind his back, and Officer Flude placed one handcuff on Mosley's right wrist. Mosley then began to flail his left hand, and Officer Flude thought he was trying to strike Officer Stern. After a "small tussle," Mosley was taken to the ground, where he continued to kick and flail. The officers ultimately restrained Mosley's legs, secured him in handcuffs, and took him into custody.

Mosley was charged with Count I, class A misdemeanor resisting law enforcement, and Count II, class A misdemeanor criminal trespass. Following a bench trial Mosley was acquitted of criminal trespass but convicted of resisting law enforcement. He was sentenced to 363 days probation.

Mosley appealed, challenging the sufficiency of the evidence that he resisted arrest. The entire argument portion of Mosley's brief in the Court of Appeals reads as follows:

> While Mr. Mosley disputed the testimony of the police officer concerning his arrest, the evidence produced by the State does not support his conviction.
>
> The testimony of the police officer was Mr. Mosley flailed his one hand after his other hand had been handcuffed. After what the police said was a small tussle, Mr. Mosley was then taken to the ground. Mr. Mosley started kicking a bit and flail around while he was on the ground according to the arresting officer. (Tr. P. 12-13)
>
> The use of force is the essential element of resisting law enforcement. *White v. State* 545 N.E.2d. 1124 (Ind. App. 1992) Some resistance by a defendant does not constitute resisting law enforcement. *Ajabu v. State* 704 N.E.2d. 494 (Ind. App. 1998) There must be some form of violent action to evade the police, a person standing his ground does not meet this requirement. *Spangler v. State* 607 N.E.2d. 720 (Ind. 1993)
>
> Mr. Mosley's actions do not meet the requirements of Resisting Law Enforcement.

The Court of Appeals affirmed, finding sufficient evidence to support Mosley's conviction. Mosley v. State, No. 49A02-0802-CR-188, slip op. at 4 (Ind. Ct. App. Sept. 19, 2008). The Court of Appeals then excerpted Mosley's brief and added:

2

> We understand that a criminal defendant has a right to an appeal of his conviction. But that does not mean that an appeal should be filed in every case. When it is clear that the trial court did not commit reversible error, it is a waste of the resources of this court and the attorney general's office and, most of all, public defender funds, for an appeal to nonetheless be filed. Trying to create issues where there are none leads to the sort of perfunctory, baseless brief we have before us today. When there are no meritorious arguments to be made, the better approach is to file a brief in accordance with our decision in Packer v. State, 777 N.E.2d 733 (Ind. Ct. App. 2002), which outlines the proper procedure for such a situation.

Id. at 5–6. In Packer, the Court of Appeals suggested that counsel faced with preparing an appeal in which they had identified no issue of merit should file an "Anders brief" using the procedure explained below. We granted transfer to address the points raised by the Court of Appeals in the foregoing paragraph. We summarily affirm the decision of the Court of Appeals that the evidence was sufficient to support Mosley's conviction for resisting arrest. Ind. Appellate Rule 58(A)(2).

## I. Mootness and Advisory Opinions

The State's sole contention on transfer is that the issue before us is moot and has no bearing on the disposition of this case. The State notes that the comments of the Court of Appeals respecting frivolous appeals were made after the court had resolved Mosley's appeal on the merits. The State argues that any discussion of Anders briefs would constitute only an advisory opinion, which, the State contends, is "something this Court has stated explicitly that it does not do."

The long-standing rule in Indiana courts has been that a case is deemed moot when no effective relief can be rendered to the parties before the court. Matter of Lawrance, 579 N.E.2d 32, 37 (Ind. 1991). When the concrete controversy at issue in a case has been ended or settled, or in some manner disposed of, so as to render it unnecessary to decide the question involved, the case will usually be dismissed. Id.

It is true that moot cases are ordinarily dismissed. Hill v. State, 592 N.E.2d 1229, 1230 (Ind. 1992) ("We do not provide advisory opinions."); State ex rel. Goldsmith v. Super. Court of Marion County, 463 N.E.2d 273, 275 (Ind. 1984) (same). But that is not always the case. The jurisdiction of federal courts is limited by Article III of the federal constitution to "cases and

controversies," and that language has long been taken to prohibit advisory opinions. See U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 446 (1993); Flast v. Cohen, 392 U.S. 83, 96–97 (1968); Muskrat v. United States, 219 U.S. 346, 361 (1911); Hayburn's Case, 2 U.S. 408, 408 (1792). The Indiana Constitution has no comparable limitation on "the judicial power of the State" conferred on the courts by article 7, section 1 of the Indiana Constitution. This Court can, and does, issue decisions which are, for all practical purposes, "advisory" opinions. Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc., 643 N.E.2d 331, 336–37 (Ind. 1994). Indeed, on occasion we have issued opinions with no case before us. See, e.g., In re Judicial Interpretation of 1975 Senate Enrolled Act No. 441, 263 Ind. 350, 350–53, 332 N.E.2d 97, 97–99 (1975) (deciding, sua sponte, that legislation setting judicial examination standards and giving lay judges limited criminal jurisdiction was unconstitutional).

In order for the Court to entertain an issue that may no longer affect the rights of the parties, the case should present an issue of "great public interest." Lawrance, 579 N.E.2d at 37; see also Gutermuth v. State, 868 N.E.2d 427, 430 n.3 (Ind. 2007). Cases in this category typically raise important policy concerns and present issues that are likely to recur. Lawrance, 579 N.E.2d at 37; Cent. Ind. Podiatry, P.C. v. Krueger, 882 N.E.2d 723, 727 (Ind. 2008). We believe the instant case exhibits both characteristics. The issue before us has significant implications for appellate practice and procedure, constitutional rights, legal ethics, and management of judicial resources. This state entertains over 1500 criminal appeals each year, see Court of Appeals of Indiana, Annual Report 1 (2008), available at http://www.in.gov/judiciary/appeals/docs/2008report.pdf, and issues surrounding allegedly "frivolous" appeals are likely to surface with some regularity. We therefore proceed to the merits of the issue raised on transfer.

## II. Anders v. California

The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Sixth Amendment right to

4

counsel applies to the states via the Due Process Clause of the Fourteenth Amendment, Gideon v. Wainwright, 372 U.S. 335, 339–45 (1963), and guarantees the assistance of counsel at critical stages of prosecution up through trial, sentencing, and various post-trial matters. See Kitchen v. United States, 227 F.3d 1014, 1018–19 (7th Cir. 2000); 3 Wayne R. LaFave, Criminal Procedure § 11.2(b), at 624 (3d ed. 2007). However, the Sixth Amendment does not apply to appellate proceedings. Martinez v. Ct. of App. of Cal., 528 U.S. 152, 161 (2000). Rather, the Equal Protection and Due Process Clauses of the Fourteenth Amendment are the source of the guarantee to indigent defendants of assistance of counsel on appeal. Douglas v. California, 372 U.S. 353, 355–56 (1963); Evitts v. Lucey, 469 U.S. 387, 405 (1985); Halbert v. Michigan, 545 U.S. 605, 610–11 (2005). That right attaches in any first appeal granted by state law as a matter of right, but not to discretionary review following initial appeals, Ross v. Moffit, 417 U.S. 600, 610 (1974), state post-conviction proceedings, Pennsylvania v. Finley, 481 U.S. 551, 555 (1987), or habeas corpus actions, Murray v. Giarratano, 492 U.S. 1, 8–10 (1989).

There is plainly tension between these rights of defendants and the obligation of attorneys not to "bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Model Rules of Prof'l Conduct R. 3.1 (2007).

In Anders v. California, 386 U.S. 738 (1967), the Supreme Court of the United States sought to address this issue by proposing the following protocol for counsel to withdraw from nonmeritorious criminal appeals in a manner that is consistent with the requirements of the federal constitution:

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

5

386 U.S. at 744. The <u>Anders</u> procedure has been described as a "prophylactic framework" designed to ensure minimum constitutional protection. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987). It is clear, however, that <u>Anders</u> represents "merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may . . . craft procedures that, in terms of policy, are superior to, or at least as good as, that in <u>Anders</u>." <u>Smith v. Robbins</u>, 528 U.S. 259, 276 (2000).

### III. <u>Anders</u> in Indiana

The first reference to <u>Anders</u> in Indiana jurisprudence appears in Justice DeBruler's concurring opinion in <u>Cline v. State</u>, 253 Ind. 264, 252 N.E.2d 793 (1969). The defendants in <u>Cline</u> were convicted of robbing a drugstore and on appeal challenged the sufficiency of the evidence supporting their convictions. <u>Id.</u> at 266, 252 N.E.2d at 794. "Appellant Covington's sole contention [wa]s that there was a failure to prove he was the same Covington who participated in the robbery." <u>Id.</u> at 268, 252 N.E.2d at 795–96. In light of four positive identifications of Covington as one of the perpetrators, the majority concluded that

> This is one of those cases where the evidence in our opinion is overwhelming in support of the conviction. We realize the appellant's attorney had very little to work with in order to make out a good-faith effort in an appeal, yet the decisions of the United States Supreme Court compels [sic] such an appeal, regardless of merit. In our opinion a great deal of useless effort and work has been expended in this case where there was no real or substantial grounds for an appeal. It is regrettable that under the circumstances an appeal has to be made in every case, regardless of merit.

<u>Id.</u> at 269, 252 N.E.2d at 796. Justice DeBruler concurred, but noted that

> No fair and constitutional method for screening out perfunctory appeals in criminal cases has as yet been devised. Any such method would necessarily involve a decision by someone that the proposed appeal being considered has no merit at all. The duty to make this decision properly attaches to the appellate tribunal rather than to the trial court, trial counsel, or appellate counsel. A decision, by an appellate tribunal, that a potential appeal has no merit, would be valid only if it were made after consideration of the occurrences at the trial level and arguments of legally trained personnel in support of both sides of the issue of whether or not a meritorious appeal exists. <u>Anders v. California</u> (1967), 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493; <u>Douglas v. California</u> (1963), 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811; <u>Draper v. Washington</u> (1963), 372 U.S. 487, 83 S. Ct. 774, 9 L. Ed. 2d 899. It would require as much time and effort to effectuate a legally sound screening method as it does to operate our present system of freely taking appeals. It should also be noted that this is the first appeal

taken by the appellants. This appeal is, therefore, not one in a series of post-appeal cases which could be characterized as harassing or frivolous.

Id. at 269, 252 N.E.2d at 796. Read in its entirety, Cline seems to be Indiana's earliest rejection of the Anders protocol.

The Court of Appeals addressed the propriety of Anders withdrawals more directly in Dixon v. State, 152 Ind. App. 430, 284 N.E.2d 102 (1972) (per curiam). In Dixon, a public defender filed an Anders brief and petitioned to withdraw as counsel from the defendant's appeal from the denial of post-conviction relief. Id. at 432, 284 N.E.2d at 103. The Court of Appeals denied the request and ordered the public defender to file an amended brief. Id. at 439, 284 N.E.2d at 107. The court rejected Anders and adopted the opinion of the American Bar Association that counsel "should not seek to withdraw because he believes that the contentions of his client lack merit, but should present for consideration such points as the client desires to be raised provided he can do so without compromising professional standards." ABA Standards, Providing Defense Services § 5.3 (Approved Draft 1968), quoted in State v. Gates, 466 S.W.2d 681, 683 (Mo. 1971). The Dixon court further noted that if it were to allow withdrawal in accordance with Anders, "several practical problems would arise, namely; appointment of new counsel should this court find merit to the appeal; representation of the petitioner should he desire to file a petition to transfer, challenging this court's determination of his appeal; and the additional cost of new counsel to the taxpayers." 152 Ind. App. at 438, 284 N.E.2d at 106–07. Although Dixon dealt with a post-conviction appeal that did not trigger a federal constitutional right to counsel, the court concluded that "petitioners seeking relief under the [then-existing] rules provided for post conviction remedies should be given the same right to effective counsel as they would in a direct appeal." Id. at 437–38, 284 N.E.2d at 106; see also Hendrixson v. State, 161 Ind. App. 434, 435, 316 N.E.2d 451, 452 (1974) (agreeing with Dixon); Smith v. State, 173 Ind. App. 433, 435, 363 N.E.2d 1295, 1297 n.1 (1977) (agreeing with Dixon in the context of a direct appeal).

This Court endorsed the Dixon holding in both Simmons v. State, 262 Ind. 30, 32, 310 N.E.2d 872, 873 (1974) (citing Dixon for the proposition that "[t]he determination as to whether or not [a post-conviction] appeal should be taken has been held to be a matter for judicial determination and not a matter to be delegated to counsel"), and Powell v. State, 268 Ind. 134,

7

136, 374 N.E.2d 495, 496 (1978) (noting with approval that Indiana "has not permitted the State Public Defender to withdraw from appeals by filing <u>Anders v. California</u> briefs").

We later retreated from <u>Dixon</u> in <u>Boone v. State</u>, 449 N.E.2d 1077 (Ind. 1983). <u>Boone</u> was an appeal from the denial of post-conviction relief in which the appellant claimed ineffective assistance of counsel on direct appeal. <u>Id.</u> at 1078, 1079. Appellate counsel had filed a brief in which he "candidly admitted that his search of the record revealed no grounds for reversing the judgment" and "concluded that he could not in good faith or good conscience represent that a remand or reversal was warranted." <u>Id.</u> at 1079. This Court cited <u>Anders</u> and observed that "[t]he record contains nothing to prove that appellate counsel's conclusion that the appeal lacked merit was other than bona fide." <u>Id.</u> <u>Boone</u> thus found no ineffective assistance in filing an <u>Anders</u>-like brief on direct appeal. Arguably it can be viewed not as an endorsement of <u>Anders</u>, but as finding no prejudice from the denial of counsel resulting from an appellate confession that there was no error below.[1]

<u>Music v. State</u> purported to overrule <u>Dixon</u> and held that in post-conviction proceedings, "the Public Defender is not obligated to raise on appeal every issue the petitioner requests be raised." 489 N.E.2d 949, 950 (Ind. 1986). "[W]here an issue is clearly not the proper subject for post-conviction relief or is deemed frivolous, the public defender's office need not raise it on appeal." <u>Id.</u> at 950–51. Moreover, in 1991 this Court amended the post-conviction rules to permit withdrawal from nonmeritorious post-conviction appeals, even without submission of an <u>Anders</u>-type brief. <u>See</u> Ind. Post-Conviction Rule 1(9)(c).

None of the cases from this Court directly addressed the propriety of an <u>Anders</u> brief on direct appeal. In what would serve as the latest major precedent on the subject, the Court of Appeals endorsed <u>Anders</u> withdrawals on direct appeal. <u>Packer v. State</u>, 777 N.E.2d 733, 737 (Ind. Ct. App. 2002). In <u>Packer</u>, the appellant's attorney filed a brief in which counsel repeatedly

---

[1] The United States Supreme Court has since held that <u>Anders</u> violations are not subject to the <u>Chapman v. California</u>, 386 U.S. 18 (1967), harmless error test or the <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), prejudice standard. <u>Penson v. Ohio</u>, 488 U.S. 75, 86 (1988). "Finding harmless error or a lack of <u>Strickland</u> prejudice in cases such as this . . . would leave indigent criminal appellants without any of the protections afforded by <u>Anders</u>" and "would render meaningless the protections afforded by <u>Douglas</u> and <u>Anders</u>." <u>Id.</u> Failure to satisfy <u>Anders</u>'s minimum requirements thus raises a presumption of prejudice. <u>Id.</u> at 88.

claimed to be "unable to construct non-frivolous arguments" on the appellant's behalf. 777 N.E.2d at 736. There was no indication that counsel had consulted with the appellant or advised her of the positions that would be taken in the brief. Id. The Court of Appeals expressed concern that counsel had provided inadequate representation and explained that a better approach would have been to follow the "dictates" of Anders. Id. at 737. The court further noted that it had uncovered no case law suggesting that the Anders procedure would be inappropriate under the Indiana Constitution. Id.; see also Seals v. State, 846 N.E.2d 1070, 1074–77 (Ind. Ct. App. 2006) (reaffirming adoption of Anders procedure).

## IV. Rejecting Anders

For the reasons explained below, we disapprove of Packer and Seals and hold that Anders withdrawals are impermissible in Indiana in any direct criminal appeal.

Simply stated, we share the same practical concerns expressed in Dixon and Justice DeBruler's concurrence in Cline. Several other states have rejected the Anders procedure for the same reasons. Overall Anders is cumbersome and inefficient. An attorney who withdraws pursuant to Anders must still review the record, complete at least some legal research, consult and advise the client, and draft a brief for submission to the Court of Appeals. 386 U.S. at 744. If all this is done, the attorney "may as well submit it for the purposes of an ordinary appeal." Commonwealth v. Moffett, 418 N.E.2d 585, 590–91 (Mass. 1981). Furthermore, the Court of Appeals must conduct a "full examination of all the proceedings" to determine if there are any meritorious issues. Anders, 386 U.S. at 744. Any saving of time and effort by counsel in preparing an Anders brief is offset by increased demands on the judiciary, which is to some extent placed in the precarious role of advocate. See Huguley v. State, 324 S.E.2d 729, 731 (Ga. 1985); State v. Gates, 466 S.W.2d 681, 684 (Mo. 1971). And if the reviewing court finds any meritorious issues, even more time and money must be spent in substituting new counsel and starting the appeal all over again. Dixon, 152 Ind. App. at 438, 284 N.E.2d at 106–07. Requiring counsel to submit an ordinary appellate brief the first time—no matter how frivolous counsel regards the claims to be—is quicker, simpler, and places fewer demands on the appellate courts. Cline, 253 Ind. at 269–70, 252 N.E.2d at 796; see also Martha C. Warner, Anders in the Fifty States: Some Appellants' Equal Protection is More Equal than Others', 23 Fla. St. U. L.

9

Rev. 625, 643–51 (1996) (describing principal considerations of states rejecting <u>Anders</u>); LaFave, <u>supra</u>, § 11.2(c), at 634 (same).

An <u>Anders</u> brief also raises issues of fairness. An <u>Anders</u> withdrawal prejudices an appellant and compromises his appeal by flagging the case as without merit, which invites perfunctory review by the court. <u>State v. Cigic</u>, 639 A.2d 251, 252 (N.H. 1994); <u>State v. McKenney</u>, 568 P.2d 1213, 1214 (Idaho 1977). The result is to jeopardize receptive and meaningful appellate review. <u>But see</u> <u>People v. Wende</u>, 600 P.2d 1071, 1075 (Cal. 1979) (finding that an <u>Anders</u> withdrawal may secure an appellant more comprehensive review by the appellate court). We understand the frustration of the Court of Appeals in receiving underdeveloped briefs and poorly substantiated arguments. We also recognize that our decision to prohibit <u>Anders</u> withdrawals may in some cases perpetuate the filing of "perfunctory" appeals. <u>Cigic</u>, 639 A.2d at 253, 254. But in a direct appeal a convicted defendant is entitled to a review by the judiciary, not by overworked and underpaid public defenders.

The professional obligation to avoid frivolous contentions is expressly "subordinate to federal or state constitutional law that entitles a defendant in a criminal matter to the assistance of counsel in presenting a claim or contention that otherwise would be prohibited." Ind. Professional Conduct Rule 3.1 cmt. The Indiana Oath of Attorneys expands this to permit a defense that the attorney regards as unjust whether or not constitutional rights are at stake. It provides in relevant part: "I will not counsel or maintain any action, proceeding, or defense which shall appear to me to be unjust, but this obligation shall not prevent me from defending a person charged with crime in any case . . . ." Ind. Admission and Discipline Rule 22. Citing the comment to Rule 3.1, Mosley urges us to reject <u>Anders</u> on state constitutional grounds as well. He urges that our decision to prohibit <u>Anders</u> withdrawals finds support in article 7, section 6 of the Indiana Constitution, which guarantees Hoosiers in all cases an absolute right to one appeal. However, we ground our opinion in this case on this Court's supervisory authority over matters of appellate procedure and professional responsibility, and do not reach the constitutional claim.

In sum, we believe that disapproving <u>Anders</u> is simpler, more effective, fairer, and less taxing on counsel and the courts. Prohibiting <u>Anders</u> withdrawals may also force counsel to be more diligent and locate meritorious issues in a seemingly empty record. <u>Gale v. United States</u>,

429 A.2d 177, 182 (D.C. 1981) (Ferren, J., dissenting). And in those few cases that offer no colorable argument of trial court error whatsoever, counsel may still be able to solicit a sentence revision or even a change in the law. Cigic, 639 A.2d at 253; Ind. Appellate Rule 7(B); see also Prof. Cond. R. 3.1 cmt. ("[T]he law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change.").

We conclude that in any criminal appeal as a matter of right, counsel may neither withdraw on the basis that the appeal is frivolous nor submit an Anders brief to the appellate court.

## Conclusion

The judgment of the trial court is affirmed. The opinion of the Court of Appeals is summarily affirmed as to the sufficiency of the evidence supporting Mosley's conviction.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.